558 A.2d 602

**Deonne R. NEW, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 17, 1989.

Decided May 16, 1989.

54

Deonne R. New, Philadelphia, pro se.

Clifford F. Blaze, Deputy Chief Counsel, Maribeth Wilt-Seibert, Asst. Counsel, Harrisburg, for respondent.

Before PALLADINO and SMITH, JJ., and KALISH, Senior Judge.

PALLADINO, Judge.

Deonne R. New (Petitioner) appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision denying benefits to Petitioner under Section 402(e) of the Unemployment Compensation Law, (Law) Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e), based on a finding that the Petitioner had engaged in willful misconduct. We affirm.

Petitioner was employed as a secretary/typing trainee by the Veterans Administration Data Processing Center in Philadelphia, Pennsylvania (employer). On May 29, 1984, Petitioner injured herself on the job while trying to prevent a stack of files from falling. The injury was diagnosed as acute sciatica. After a period of medical leave, Petitioner returned to light duty work, part time, four hours per day, and eventually returned to full time work. In September, 1986, Petitioner reinjured herself and after a period of medical leave, returned part-time to light duty work. Petitioner resumed full time work in February, 1987.

In July 1987, Petitioner suffered a second recurrence of her condition, and was granted medical leave beginning on July 25, 1987. On August 31, 1987, Petitioner's physician sent a note to the employer which stated that Petitioner could return to work four hours per day as soon as "she is given a parking space in Gate # 3" and "her working area [is] redesigned." Record Item 4, Exhibit 7.

In a letter dated September 30, 1987, Record Item 4, Exhibit 9, the employer authorized four hours of leave without pay (LWOP) per day for Petitioner. This LWOP status was for a period of six weeks from August 31, 1987, to October 11, 1987, and was granted as a result of the August 31, 1987 note from Petitioner's physician. The employer also agreed to redesign Petitioner's work area. The employer, however, did not agree to give Petitioner a parking space at Gate 3. Instead, the employer assigned Petitioner a space in the handicapped parking area at Gate 7. This was the lot designated by the employer for all handicapped employees.

In a follow up letter dated October 14, 1987, Record Item 4, Exhibit 10, in response to a query why Petitioner had been assigned the parking spot at Gate 7 rather than at Gate 3, the employer stated that it was because "[t]hat parking area involves no stairs to climb and has the mildest grade into the office." Petitioner was ordered back to work immediately, since reasonable accommodation had been made. The letter also contained the following warning:

We feel that our offer was reasonable from October 7 onwards. Therefore, by not reporting you risk being charged absent without leave from October 7, 1987. In addition, disciplinary/adverse action may result from your failure to report.

Finally, a second letter from Petitioner's physician, dated October 14, 1987, stated that Petitioner could return to work for four hours per day. This letter did not request any further accommodation. Record Item 4, Exhibit 8. Petitioner refused to return to work.

Petitioner was informed by way of letter dated December 15, 1987, Record Item 4, Exhibit 11, of her proposed removal, and was removed from her position, effective February 11, 1988, Record Item 4, Exhibit 12.

The Office of Employment Security issued a determination denying benefits to Petitioner under Section 402(b), 43 P.S. § 802(b), (voluntary quit) of the Law. A timely Petition For Appeal was filed, and on April 21, 1988, a Notice of Hearing On Original Appeal was sent to Petitioner indicating that three issues would be considered at the hearing, i.e. whether Petitioner's unemployment was due to voluntarily leaving work without cause, whether she was able and available for suitable work, and whether her unemployment was due to discharge for willful misconduct. Following the hearing, the referee found that Petitioner had not voluntarily left her employment, but that Petitioner was ineligible for benefits because of her willful misconduct connected with her work. The Board affirmed the referee's decision.

Petitioner alleges three errors in the Board's determination, namely that she was deprived of her right to a fair hearing in violation of the Fourteenth Amendment, that she met her burden of proving that she did not voluntarily quit, and therefore was entitled to benefits, and that the finding of willful misconduct is not supported by substantial evidence.

Our scope of review of Board determinations is limited to whether the Board committed an error of law, violated constitutional rights, or whether the findings of fact are supported by substantial evidence. *Emery Worldwide v. Unemployment Compensation Board of Review*, 115 Pa. Commonwealth Ct. 554, 540 A.2d 988 (1988). Willful misconduct is a question of law subject to our review. *Schneider v. Unemployment Compensation Board of Review*, 105 Pa.Commonwealth Ct. 238, 523 A.2d 1202 (1987).

Petitioner raises the issue of denial of a fair hearing for the first time on appeal and because Petitioner failed to raise this issue before the Board, it cannot be addressed by this court *Simpson v. Unemployment Compensation*

*Board of Review,* 79 Pa.Commonwealth Ct. 536, 469 A.2d 733 (1984).

Because Petitioner's second allegation of error was corrected by the Board, when it found that the evidence did not support a finding of voluntary quit, but that her termination was due to willful misconduct, we need not address this issue further.

The final error claimed is whether the finding of willful misconduct is supported by substantial evidence. Willful misconduct is defined as an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978). An employee's refusal to comply with work assignments may constitute willful misconduct unless the employee establishes good cause for his actions. *Kretsch v. Unemployment Compensation Board of Review,* 83 Pa.Commonwealth Ct. 169, 476 A.2d 1004 (1984). The burden of proving willful misconduct is on the employer, *Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board of Review,* 55 Pa.Commonwealth Ct. 10, 422 A.2d 905 (1980), while the burden of proving good cause is on the employee, *Holomshek v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 503, 395 A.2d 708 (1979).

In the present case, the employer met its burden of showing willful misconduct. The employer acknowledged the request of Petitioner for accommodation to her handicapped condition, by agreeing to redesign the work space, and assigning a new parking space. The employer then ordered Petitioner to return to work. Petitioner refused to do so until she was given a different parking space.

▉▉▉▉ In determining whether an employee's refusal of an employer's order to accept work assignments constitutes willful misconduct, we must balance the reasonableness of the request with the reasonableness of the refusal. *Kelly v. Unemployment Compensation Board of Review*, 56 Pa.Commonwealth Ct. 262, 424 A.2d 612 (1981). The parking space assigned to Petitioner was located so that Petitioner had no stairs or steep grades to climb, and was 883 feet from her work site. The parking space which Petitioner demanded required her to negotiate one set of stairs of about four steps, and was a walking distance of 608 feet. Other than the one letter from Petitioner's physician which requested the parking spot at Gate 3, the medical evidence does not support Petitioner's demand. The medical records state that the physician "asked her to park closer to her work and get a typewriter stand that allows her to get close to the typewriter" and that "[p]art-time work is alright as long as she gets above changes." Record Item 4, Exhibit 7. The employer met both of these conditions. Furthermore, after receiving notification of the proposed accommodations, Petitioner's physician released Petitioner to work for four hours per day, without any additional requests for accommodation. Therefore, we conclude that the employer's request to return was reasonable.

Petitioner, however, has failed to show good cause for failing to comply with the employer's order to return to work. Petitioner presented no medical evidence to either the employer or the Board which supports Petitioner's claim that the redesigned work area and new parking space would not accommodate Petitioner's medical condition. The refusal to obey an order to return to work, once the changes had been made in the work site, without further evidence that these changes would not satisfy the medical needs of Petitioner, does not establish good cause for the refusal to return to work.

Accordingly we affirm.

## ORDER

AND NOW May 16, 1989, the decision of the Unemployment Compensation Board of Review in the above captioned matter is affirmed.